In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――――

No. 20-3151

ROBERTO MATA,

*Petitioner-Appellant,*

*v.*

TYRONE BAKER, Warden*

*Respondent-Appellee.*

―――――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-01376 — **Andrea R. Wood**, *Judge.*

―――――――――――――

ARGUED FEBRUARY 7, 2023 — DECIDED JULY 19, 2023

―――――――――――――

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

BRENNAN, *Circuit Judge*. In 2005, Roberto Mata was convicted on two counts of first-degree murder and one count of aggravated battery with a firearm. In this appeal from the

―――――――――――――

* Tyrone Baker, the present warden of Hill Correctional Center, was substituted for Christine Brannon-Dortch as the respondent in this case. FED. R. APP. P. 43(c).

denial of his habeas petition under 28 U.S.C. § 2254, Mata argues his trial counsel provided ineffective assistance by failing to pursue a hearing on his motion to suppress his videotaped confession. Because Mata procedurally defaulted this claim and he does not show cause to excuse the default, we affirm the district court's denial of his petition.

## I. Background

### A. Underlying Crime and Investigation

In the early morning of March 16, 2002, Mata fired shots at Adrian Padilla, Sandar Mosqueda,[1] and Edwin Delgado, killing Padilla and Mosqueda and injuring Delgado. Chicago police officers arrested Mata that evening, and the following day Mata agreed to give a videotaped statement.

In the statement, Mata explained he had attended a housewarming party with his girlfriend on the evening of March 15. After leaving the party, Mata was walking down the street when he heard his friend Reynaldo Mares call out his name from behind. He turned around and saw two men holding Mares by his arms while two other men surrounded him. Mata took out his gun and fired one shot in their direction. The men backed away, but one man reached for his pocket. Believing the man intended to draw a weapon, Mata fired five more shots in the group's direction. He then ran toward his girlfriend's car. According to Mata, all the men were walking away with their backs to him when he fired the

---

[1] Throughout the federal and state courts, this individual's last name was spelled "Mosqueada." Upon review of the entire record, the correct spelling is "Mosqueda," which we use here.

additional five shots, and he never saw any of them with a weapon.

Prior to the videotaped statement, several times investigators apprised Mata of his *Miranda* rights. Detective Kevin Bor read Mata his *Miranda* rights following his arrest, and Mata said he understood them. Later, at the police station, Detective Patrick Smith and Assistant State Attorney Lisa Mojica interviewed Mata on separate occasions, during which they again informed Mata of his *Miranda* rights. In both instances, Mata stated he understood his rights.

After those interviews, Mata agreed to give the videotaped statement. He began by confirming on camera that Mojica had advised him of his constitutional rights. Mojica then read Mata his *Miranda* rights again on tape. Mata said he understood his rights and confirmed he wanted to make the statement on camera. After detailing the events surrounding the shooting, he closed the 22-minute video by saying the police had treated him "well and fairly," and that he had been given food, water, and bathroom access. He affirmed he gave the statement "freely and voluntarily" without any threats or promises by the police or the detectives.

### 1. *Motion to Suppress*

Before trial, defense counsel moved to suppress Mata's "oral, videoed, and written statements" as well as any evidence seized at his home after his arrest. Counsel alleged that Mata's videotaped "confession was not voluntary" because he "was subjected to physical and mental abuse by the Chicago Police Department for two days prior to being given any Miranda warnings;" "was poked and profaned by the Chicago police;" and "was forced to stand handcuffed to a cell

wall for hours." Counsel also claimed Chicago Police officers threatened Mata but identified no specific threats.

The trial court held a hearing on the suppression motion but addressed only the evidence obtained at Mata's home. Because Mata had not consented to a home search, the trial court suppressed the evidence seized there. At a later date, Mata's counsel asked the trial court to resolve his request to suppress Mata's oral, written, and videotaped statements, including his videotaped confession. The trial court said it would decide when to hear the remaining portion of the suppression motion at an upcoming status conference. At that status conference, Mata's trial counsel flagged the unresolved "other half of [Mata's] Motion To Suppress." The trial court made no statement about the suppression motion and instead said the parties had agreed to a trial date.

### 2. *Trial*

The State called Delgado as its sole eyewitness at trial. He testified he was walking down the street with his friend Padilla when Padilla spotted Mata and Mares and asked them who they were. Mares ran toward Delgado and struck him in the chest, and Delgado pinned Mares to the ground. When Mares called for Mata's help, Mata drew a gun and pointed it at Delgado, prompting Delgado to let go of Mares and back away. Delgado claimed Mata then shot him in his buttocks. As Delgado ran away, he heard six shots fired in his direction and witnessed Padilla fall "like a brick" after getting hit by gunfire. Delgado also witnessed Mata shoot his other friend, Mosqueda.

As part of its case, the State played Mata's videotaped confession. Bor, Smith, and Mojica each testified they had

informed Mata of his *Miranda* rights before the video and that, each time, Mata affirmed he understood them. Smith further testified he had not threatened Mata in any way. In addition, the state presented medical evidence consistent with Padilla being shot in the back while trying to run away.

Mata chose to testify. He did not contest that he shot Delgado, Padilla, or Mosqueda. Instead, he argued the need to defend his friend Mares justified the use of deadly force. If deadly force was unreasonable given the circumstances, Mata contended he was guilty of only second-degree, as opposed to first-degree, murder.

In contrast to his videotaped confession, Mata testified he witnessed the men kicking and punching Mares. He then fired a warning shot in the air at which point the men backed up but did not leave. When he saw one of the men reach for his waist, Mata fired a few more times. He said he heard gun shots as he ran toward his girlfriend's car. Once inside the car, he testified he saw a man running down the street shooting a gun.

The jury found Mata guilty on two counts of first-degree murder and one count of aggravated battery with a firearm. Mata was sentenced to life in prison for the first-degree murder convictions and 10 years' imprisonment for the aggravated battery conviction. On direct appeal, the Illinois Appellate Court rejected Mata's claim that his trial counsel provided ineffective assistance by failing to impeach Delgado with prior inconsistent statements.

**B. State Postconviction Proceedings**

In 2008, Mata filed a pro se postconviction petition, claiming his trial counsel was ineffective for failing to pursue the

motion to suppress his videotaped confession. He also claimed his appellate counsel was ineffective for not raising trial counsel's failure on direct appeal. Mata did not allege new facts or provide new evidence outside the trial record to support his claims. The Illinois Circuit Court summarily denied his petition.

The Illinois Appellate Court affirmed. Citing *People v. Harris*, 862 N.E.2d 960 (Ill. 2007), the court first determined that Mata waived his ineffective assistance of trial counsel claim by not raising it on direct appeal. Because the State played Mata's videotaped confession at trial and Mata testified at trial about his earlier statements to the state's attorney and police, the appellate court considered "[t]he motion to suppress and [Mata's] videotaped confession … matters in the trial record." As such, Mata "could have raised the present claim" of trial counsel's ineffective assistance "on direct appeal." By not doing so, Mata waived the claim.

The state appellate court then addressed Mata's claim for ineffective assistance of appellate counsel. The court reasoned that the motion to suppress Mata's videotaped statement would not have succeeded because the record contradicted Mata's claims of abuse. Bor, Smith, and Mojica all testified they had advised Mata of his *Miranda* rights and that, each time, Mata confirmed he understood them. Mata also acknowledged on video that Mojica had informed him of his constitutional rights. Because the motion would not have succeeded, trial counsel presumably abandoned the motion as part of a sound trial strategy. Consequently, appellate counsel was not ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

Mata petitioned for leave to appeal to the Illinois Supreme Court, raising only his ineffective assistance of trial counsel claim. That court denied his petition in 2011.

### C. Federal District Court

In 2012, Mata sought a writ of habeas corpus in federal court, raising claims for ineffective assistance of trial and appellate counsel. The district court concluded that Mata had procedurally defaulted his claim that trial counsel was ineffective because the Illinois Appellate Court's finding of waiver served as an independent and adequate state procedural ground for the claim's dismissal. As to the other claim, the district court determined that the state court did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), in deciding that appellate counsel was not ineffective. Accordingly, the district court denied Mata habeas relief.

At Mata's request, we granted a certificate of appealability under 28 U.S.C. § 2253(c)(2) on the issue of whether he procedurally defaulted his ineffective assistance of trial counsel claim.[2]

## II. Analysis

Mata challenges the district court's denial of his habeas petition. He argues his Sixth Amendment right to counsel was violated when his trial counsel failed to pursue a hearing on the motion to suppress his videotaped confession. "When reviewing a district court's ruling on a habeas corpus petition,

---

[2] The court thanks Mata's court-appointed counsel Michael Rayfield and Mariham Yaft of Shook Hardy & Bacon LLP for their excellent advocacy on Mata's behalf.

we review the district court's factual findings for clear error and rulings on issues of law *de novo*." *Sanders v. Radtke*, 48 F.4th 502, 508 (7th Cir. 2022) (quoting *Lee-Kendrick v. Eckstein*, 38 F.4th 581, 585–86 (7th Cir. 2022)).

We first consider whether Mata procedurally defaulted his ineffective assistance of trial counsel claim. Because we conclude that he did, we examine whether Mata shows cause to excuse that default. "As to whether a claim is procedurally defaulted, our review is de novo." *Wilson v. Cromwell*, 69 F.4th 410, 418 (7th Cir. 2023).

**A. Ineffective Assistance of Trial Counsel**

Federal courts "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); 28 U.S.C. § 2254(b)(1)(A). Federal review is precluded because "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The Illinois Appellate Court was the last state court to consider Mata's claim of ineffective assistance of trial counsel.[3] It ruled that Mata waived the claim by not raising it on direct appeal because it stemmed from "matters in the trial record."

---

[3] The Illinois Supreme Court denied Mata's petition for leave to appeal without comment. We therefore look to the Illinois Appellate Court's decision. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that federal courts on habeas review look to the "last related state-court decision that [ ] provide[s] a relevant rationale").

A state law procedural ground satisfies the independence prong when "the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Lee-Kendrick*, 38 F.4th at 587 (quoting *Garcia v. Cromwell*, 28 F.4th 764, 774 (7th Cir. 2022)). Mata does not contest that waiver served as an independent basis for the dismissal of his ineffective assistance of trial counsel claim.

The parties disagree as to whether the Illinois Appellate Court's application of the waiver doctrine constitutes an adequate state law procedural ground. A state ground is "adequate" if it is "firmly established and regularly followed." *Wilson*, 69 F.4th at 419 (quoting *Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017)). And the state ground "must not have been applied in a manner that 'impose[s] novel and unforeseeable requirements without fair or substantial support in prior state law' or 'discriminate[s] against claims of federal rights.'" *Id.* (quoting *Clemons*, 845 F.3d at 820). When examining adequacy, we limit our review to whether the state ground "is a firmly established and regularly followed state practice at the time it is applied, not whether the review by the state court was proper on the merits." *Id.* (quoting *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014)).

We have repeatedly held that "[a] finding of waiver by [an Illinois] postconviction court is enough to establish an adequate and independent state ground." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009); *see also Daniels v. Knight*, 476 F.3d 426, 431 (7th Cir. 2007); *Schaff v. Snyder*, 190 F.3d 513, 526 (7th Cir. 1999). "Under Illinois law, '[f]ailure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding.'" *Sturgeon*, 552

F.3d at 611 (quoting *People v. Erickson*, 641 N.E.2d 455, 458 (Ill. 1994)). Illinois law provides an exception "where the facts relating to the claim do not appear on the face of the original appellate record." *Id.* (quoting *People v. Whitehead*, 662 N.E.2d 1304, 1312 (Ill. 1996)). In those instances, "such a claim could not have been *considered* by the reviewing court because the claim's evidentiary basis was *de hors*," or outside, "the record." *Id.* (quoting *Whitehead*, 662 N.E.2d at 1312).

In examining Illinois state court decisions, we have also recognized Illinois's firmly established practice of applying its waiver doctrine to ineffective assistance of counsel claims. *See, e.g.*, *Sturgeon*, 552 F.3d at 611; *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009); *Martin v. Evans*, 384 F.3d 848, 855 (7th Cir. 2004). Thus, when an Illinois postconviction court declines to consider a claim for the ineffective assistance of trial counsel because it could have been raised on direct appeal, that determination is an "adequate … state ground" for the claim's dismissal which precludes federal habeas review. *Sturgeon*, 552 F.3d at 611.

For example, in *Sturgeon*, the Illinois Appellate Court concluded that a defendant waived his ineffective assistance of trial counsel claim by not raising it on direct appeal. 552 F.3d at 611. In federal court, the defendant argued that the state court's waiver decision was not based on an adequate and independent state ground because he presented "extra record evidence" in his postconviction petition. *Id.* But by the defendant's own admission, his claim relied on evidence "within the scope of the appellate court's review on direct appeal." *Id.* His claim therefore did not fall within the waiver exception articulated in *Whitehead* for "matters which … depended upon facts not within the trial record." *Id.* (quoting

*Whitehead*, 662 N.E.2d at 1314). We concluded that the "Illinois Appellate Court's determination that [the defendant's] ineffective-assistance-of-trial-counsel claim was waived [was] thus an adequate and independent state ground," barring review of the claim on federal habeas. *Id.*

Similarly, in *Smith v. Gaetz*, the Illinois Appellate Court ruled that a defendant waived his ineffective assistance of trial counsel claim because "although available to [the defendant] on direct appeal, he did not raise it." 565 F.3d 346, 351 (7th Cir. 2009). This court determined that the state court's decision not to review the defendant's claim based on waiver "rest[ed] upon a ground that is both independent of the federal question and adequate to support the judgment." *Id.* (quoting *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993)). A similar conclusion was reached in *Martin v. Evans*, another instance where an Illinois postconviction court concluded a defendant waived his ineffective assistance of trial counsel claim because the claim "involved matters of record which could have been raised on direct appeal." 384 F.3d at 855. "The [state] court's express reliance on the established rule of waiver render[ed] the claims procedurally defaulted" under the independent and adequate state ground doctrine. *Id.* As in *Sturgeon*, *Smith*, and *Martin*, the Illinois Appellate Court's conclusion of waiver here constitutes an adequate state law ground.

Mata argues the Illinois Appellate Court's waiver decision departed from the state's firmly established practices, as Illinois state courts have "repeatedly noted that a default may not preclude an ineffective-assistance claim for what trial counsel allegedly *ought* to have done in presenting a defense." *People v. West*, 719 N.E.2d 664, 670 (Ill. 1999) (emphasis added).

For support, Mata relies on the Illinois Supreme Court's statement in *People v. Erickson* that a "claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation." 641 N.E.2d at 459. Since Mata alleges his trial counsel ought to have pursued the motion to suppress, he submits he did not waive his claim.

*West* and *Erickson* do not support Mata's argument. As he points out, claims about what counsel ought to have done may depend on evidence outside the record. *Erickson* and *West* recognize as much. But Mata misunderstands the proper focal point of those cases. The exception to Illinois's waiver rule turns on whether a claim is based on evidence outside the trial record—not on whether the claim makes allegations about what counsel ought to have done. To avoid default on postconviction review, a petitioner must present evidence "not in the trial record" supporting the claim and must demonstrate "why the claim it supports could not have been raised on direct appeal." *Id.* at 458. Here, the Illinois Appellate Court did not deviate from its firmly established practice of asking whether Mata supported his claim for ineffective assistance of trial counsel with evidence outside the trial record. Because Mata did not, the state appeals court considered the claim waived on postconviction review.

Mata also contends his postconviction petition asserted facts outside the trial record because it pointed to "evidence of coercion that was not developed" at trial, such as allegations that the Chicago police officers made promises and threats related to his girlfriend and child. But federal courts may not "reexamine state-court determinations on state-law questions." *Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019)

(quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). This prohibition extends to a state's application of a state's procedural rules. *Oaks v. Pfister*, 863 F.3d 723, 727 (7th Cir. 2017) (noting that "arguments about the state courts' applications of state procedural rules do not avoid the procedural default"). We may examine only whether a state procedural rule is a firmly established and regularly followed state law practice, not whether the application of such a rule to the defendant's case was proper on the merits. *Id.*; *see also Lee*, 750 F.3d at 694.

Here, Mata did not allege any new facts about the voluntariness of his videotaped confession in his postconviction petition. He first claims officers made threats about his girlfriend and his child in his federal habeas petition, not his postconviction petition. Given the lack of new factual allegations in Mata's postconviction petition, the Illinois Appellate Court did not apply the state's waiver doctrine in a "novel and unforeseeable" manner. We therefore conclude that the court's waiver determination served as an adequate and independent state ground to dismiss Mata's ineffective assistance of trial counsel claim. So, his claim is procedurally defaulted, precluding our review of the claim's merits.

## B. Ineffective Assistance of Appellate Counsel

Mata initially argued that—even if he defaulted his ineffective assistance of trial counsel claim—the failure of his appellate counsel to raise that claim on direct appeal excused the procedural default. Federal courts may review a procedurally defaulted claim if a petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation

of federal law." *Wilson*, 69 F.4th at 421 (quoting *Coleman*, 501 U.S. at 750). "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Smith*, 565 F.3d at 352. But "[t]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Id.*; *see also Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000).

Before seeking federal habeas relief, state prisoners must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Davila*, 137 S. Ct. at 2064. Accordingly, Mata had to raise his ineffective assistance of appellate counsel claim "at each level of state court review," including "in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court." *Smith*, 565 F.3d at 352. A failure to raise a claim for "one complete round of state court review" results in procedural default. *Id.* at 351.

The State argues Mata failed to raise his claim of appellate counsel's ineffectiveness in his petition for leave to appeal. After review of the record, we agree. Mata did not allege that his appellate counsel provided ineffective assistance in his petition for leave to appeal with the Illinois Supreme Court. Instead, he argued the Illinois trial court erred in summarily dismissing Mata's pro se petition because he made a colorable claim that his "trial attorney acted ineffectively in abandoning, without explanation, a written motion to suppress" which had "arguable merit." As mentioned, "[t]o exhaust state remedies in the Illinois courts, the prisoner must include his claims in a petition for leave to appeal to the Illinois

Supreme Court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). Because Mata did not include his claim for ineffective assistance of appellate counsel in his petition for leave to appeal, he procedurally defaulted the claim.

In his reply brief before us, Mata conceded he "defaulted his appellate-ineffectiveness claim by failing to raise it in his petition for leave to appeal." He has therefore abandoned the argument on appeal.[4] We acknowledge we need not "accept a concession when the point at issue is a question of law." *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005). But our independent review of the record confirms that Mata defaulted this claim by not exhausting the state remedies available. Thus, any alleged error by Mata's appellate counsel cannot excuse the procedural default on his trial counsel claim.

### III. Conclusion

The Illinois Appellate Court dismissed Mata's ineffective assistance of trial counsel claim on an adequate and independent state ground, so the claim is procedurally defaulted. As to the ineffectiveness of Mata's appellate counsel, Mata did not raise the claim for one complete round of state court review, so that claim is also procedurally defaulted. For these reasons, we AFFIRM the district court's denial of Mata's petition for federal habeas relief.

---

[4] At oral argument, Mata's counsel confirmed his decision to concede procedural default on the ineffective assistance of appellate counsel claim and abandon the good cause argument on appeal. Oral arg. at 8:53–9:12, 10:32-10:53.